COMMONWEALTH
FOR  HETH  &
HALBERT
*vs*
DICKINSON, &c.

---

COVENANT. **Commonwealth for Heth & Halbert *vs* Dickinson, &c.**

*Case* 109.                    ERROR TO THE JEFFERSON CIRCUIT.

*Sheriffs' bonds.    Sales under execution.*

*June* 26.    JUDGE MARSHALL delivered the opinion of the Court.

THIS action is brought against the Sheriff of Jefferson
The case stated. county and his sureties, for an alledged breach of his official bond. The facts are in substance, that on the first day of February, 1841, a lot of twenty six and a half feet front, in the City of Louisville, had been sold as the property of one Kelker, under an execution against him and another, and in favor of Donaldson, H. S. Smith being the purchaser for $372 82½; that in March following, a subsequent execution in favor of Samuel Churchill against Kelker, was levied on his right to redeem said lot, and on the 3d of May, 1841, the same was sold to Minor Redd for the debt and costs, being $213 49; that on the 16th of April, 1841, an execution of that date, in favor of Donaldson and against Kelker and another, was also levied on the same right of redemption; and on the 21st. of May, 1841, an execution of the 19th, in favor of Heth & Halbert, the relators, against Kelker, was levied "subject to execution No. 3299, (Donaldson's,) on all the right, title, and interest" of Kelker in the same lot. On the 5th day of July, 1841, the same was sold under both executions, and the relators, Heth & Halbert, by their agent, became the purchasers at the price of $122 21 cents, the amount due on both executions, of which sum they paid $14 14 on the elder execution, and $5 10,

Sheriff's commission, and for the residue, their own execution was returned satisfied.

The three last levies and sales were made by the same deputy, McReynolds, who made no mention, at the time of the last sale, of the nature of the interest which he was offering, although the plaintiff's agent told him he had come to buy in the property levied on, and inquired as to the validity of a certain mortgage, as to which both were of opinion that it was invalid. Nothing more was said about the title, and nothing about the previous executions and sales.

The Court refused to permit this agent to answer the question whether he thought he was purchasing an unincumbered title to said lot, and would not permit him to state his belief that Heth & Halbert did not know that they had purchased nothing until about a year after the sale, when they wanted a deed, and that he had heard them say nothing about the purchase until that time. To the rejection of this testimony, and to the admission of Kelker, the debtor, to depose as a witness, the plaintiffs excepted; and the defendants excepted to the exclusion of Kelker's statement, that he had verbally directed the Sheriff to levy the execution on his right to redeem said lot.

Upon these exceptions we observe, that as the agent was sent to buy in the property, his thinking that it was unincumbered was immaterial to the support of the action, though his knowledge of the facts might have been material for the defence; and his belief of the ignorance of Heth & Halbert, founded on his not having heard them speak of their purchase for a year, was wholly incompetent to prove their ignoranae. The excluded statement of Kelker, who was a competent witness, was irrelevant and incompetent, because his parol direction to levy on an interest not subject to execuiion, was wholly insufficient to pass it by the sale; and although it might have formed some excuse for making the levy, it did not make it valid, nor furnish any ground for adhering to it, unless Kelker had executed a written authority or being present at the sale, had there acted in such a manner as to estop him from afterwards asserting title. The complaint is,

*Parol directions given by defendant in execution to levy upon an interest not subject to execution are incompetent, and will not be effectual to pass such interest on a sale by the officer, unless def't. was present at the sale and assenting thereto.*

that the Sheriff, knowing the condition of the interest which he was offering to sell, failed to announce it, and fraudulently and in violation of his duty, offered for sale that which he had no authority to sell, thus inducing the relators to bid and to pay their money and lose the benefit of further executions on their judgment, when they got nothing, and that he returned their execution satisfied, when he knew, or ought to have known, that nothing had been or could be realized upon the sale. This is the gravamen of the action, and although the excluded statement of Kelker|might tend to relieve the Sheriff from the imputation of intentional fraud, still if it was his plain duty to have announced the condition of the interest which he was selling, and to have furnished himself with such evidence of his authority to make the sale, as would have secured that interest to the purchaser. His omission to do these things, whether it proceeded from ignorance of his duty or a fraudulent intention, rendered him liable for the damage consequent upon his failure. Ignorance of a plain duty cannot relieve him from this responsibility, as to which, if fraud were material, gross ignorance is often deemed equivalent to fraud.

The first question then is, whether the Sheriff violated his duty in not announcing the facts which he knew with regard to the interest which he was offering to sell. We are not now inquiring whether it is the duty of the Sheriff to search out for incumbrances upon a title *prima facie* liable to sale, but what he should have done when offering for sale an interest which, if it had ever been subject to levy and sale, had by his own acts, been placed in such a condition as not that it could not be available to any purchaser, but by his paying, within a limited time, (say six months,) the amount of the previous purchases, with the per centum thereon, and whether it was not his duty to announce these facts so well known to him, and of which the mass of bidders must have been presumed to be ignorant. The question is, whether every bidder has not a right to expect from the Sheriff the exercise of that good faith which prescribes that every private vendor shall communicate facts so material as these, and which being peculiarly within his knowledge, are at the same

time not presumed to be known to the purchaser. And whether the failure to perform this plain duty of good faith, is not a fraud in the Sheriff as it would be in any other individual. Were it conceded that *coveat emptor* is the general rule applicable to execution sales, even that rule would not shield the Sheriff from responsibility for a fraudulent concealment, nor throw the consequent loss upon an innocent purchaser.

In the cases of *McGhee* vs *Ellis & Browning*, (4 *Litt.* 244,) and *Wolford* vs *Phelps*, (2 *J. J. Marshall*, 31,) this Court, in discussing the duties and liabilities of a Sheriff, have gone much farther than is necessary to show that the Sheriff, in this case, violated his duty, and that he is responsible as for a fraud. In the last of these cases it is said to be ''his duty to make known to bidders the nature of the interest which he offers for sale,'' page 33. In the other case, page 246, it is said, ''the purchaser has a right to presume he (the Sheriff,) has done his duty, and to infer from his office, the execution and the sale, that he brings a good title, and if he does not, that the Sheriff has so far violated his duty as to deceive him.'' And in the first case, page 35, it is said, ''if he takes the land in execution, knowing that the defendant has no title, his conduct is a fraudulent violation of duty.'' Here the Sheriff, without mistake or ignorance of the facts, sold land, or an interest in land, which he had no authority to sell, and failed to state the nature of the interest sold and the facts regarding it which he knew, and which it was essential that every bidder should know. And we can but consider his conduct as a violation and neglect of duty, for which he is liable on his official bond, though the misconduct may amount to a fraud in the deputy who actually conducted the execution.

But although the failure to announce the nature of the interest offered for sale, was a breach of official duty, it could not be denominated a fraud as to any purchaser who was otherwise apprised of the facts before his purchase. Nor could the present relators, if thus apprised of the facts, maintain this action for the recovery of more than nominal damages, either for the levy or return of their execution, or for the sale of a pretended interest to them,

*volenti non fit injuria.*   But they had a right to trust to the Sheriff for obeying the mandate of the writ, and if they were, in truth, ignorant of the facts when they purchased, they may rightfully hold the Sheriff responsible to the full extent of their loss, not only in the money paid' upon the purchase, but also in the return of their execution as satisfied.   They got nothing by their purchase. If they were ignorant of the facts, they had a right, knowing as must be presumed, that Kelker once had title to the lot, and was in possession of it, to rest satisfied in the belief that they had made the first purchase.   They had no reason to suppose otherwise, no motive or ground for inquiring about facts of which they had no intimation, and should not suffer for their inactivity until the time was coming round when they might expect either that the lot would be redeemed or that they might obtain an indefeasible title.   They did not know that there was any occasion either for their attempting to redeem the lot, or to quash the execution.   And if, as the evidence conduces to prove, their debt might have been made a short time after this sale, had an execution then been in hand, we are of opinion that assuming their continued ignorance of the nature of their purchase, they may recover in this action the whole amount of their bid, with interest; notwithstanding the fact that their debtor had no other property at the time of the levy and sale, except his interest in the lot, if after having subsequently had other property sufficient to satisfy the debt, he again became insolvent before the relators were apprised of the grounds for quashing the return, or before they could have made their knowledge available for that purpose.   If their debt could not have been made in the interval just designated, they would be entitled to recover only the amount paid upon the former execution, and for the Sheriff's commission with interest.   We will only add, that even if Kelker was present at the sale, and if he would have been concluded as to his interest, when it was not defined nor sold as by his authority or assent, still the purchase could not have been made available by one who was ignorant of the facts, and who knew neither that there was any right of redemption nor that he was purchasing such right, and

the case would not be alcred by the fact supposed. Having thus stated the principles which, as we suppose, cover the whole case, it is sufficient to say that the opinions of the Court in giving and withholding instructions, were inconsistent with these principles, and seem to have placed the case before the jury on the basis that the Sheriff was not liable for damages unless he either actually misrepresented the facts or failed to answer inquiries, or was guilty of an intentional fraud.

Wherefore, the judgment is reversed upon the errors assigned by the plaintiffs in the writ, and the cause is remanded for a new trial.

. *Ballards* for plaintiffs: *Loughborough* for defendants.