THE STATE TO THE USE OF L. GLASER ET AL., Respondent, v. ISAAC M. MASON ET AL., Appellants.

St. Louis Court of Appeals, January 18, 1887.

1. DEBTOR AND CREDITOR—PREFERENCE—FRAUDULENT SALES.—A creditor may receive a preference by taking his debtor's property at its fair valuation in payment of the debt, although he may know that his debtor does not intend to pay his other creditors, and although its necessary effect is to hinder other creditors in the collection of their demands.

2. PRACTICE—INSTRUCTIONS.—It is not error to refuse to give correct instructions covering propositions fully covered by instructions already given.

3. EVIDENCE—INTENT.—The intent with which an act was done being material, a party to the transaction may testify to the intent with which he did the act.

APPEAL from the St. Louis Circuit Court, W. H. HORNER, Judge.

*Affirmed.*

NATHAN FRANK and KRUM & JONAS, for the appellants: The question as to the intent with which the act was done may be solved by the testimony of the parties themselves. *Blue v. Penniston*, 27 Mo. 212; *Sibley v. Hood*, 3 Mo. 290 ; *Ross v. Crutsinger*, 7 Mo. 245 ; *Lane v. Kingsberry*, 11 Mo. 402; *Steward v. Leverence*, 43 Mo. 334; *Smalley v. Hale*, 37 Mo. 102; *Hopkins v. Sievert*, 58 Mo. 201 ; *Burgert v. Borchert*, 59 Mo. 80. An instruction that a "preference is valid even though when it is given the debtor may not intend to pay his other creditors, and even though the preferred creditor is aware thereof," is erroneous. *Shelley v. Boothe*, 73 Mo. 74; *Forrester v. Moore*, 77 Mo.

VOL. XXIV—21

651 ; *Mc Veagh v. Baxter*, 82 Mo. 518 ; *McNichols v. Richter*, 13 Mo. App. 515. Where the purpose of a conveyance of property by a debtor is to pay all his creditors except one, two, or three, such a conveyance has been held to be null and void. *Allen v. Berry*, 40 Mo. 282.

Martin, Laughlin & Kern, for the respondent: The court did not err in refusing the defendant's instructions numbers one, two, and three, or in giving the plaintiff's instruction number three. The law was correctly declared in the instructions given. *Shelley v. Boothe*, 73 Mo. 74 ; *The State ex rel. v. Merritt*, 70 Mo. 275 ; *Dougherty v. Cooper*, 77 Mo. 528 ; *Calhoun v. Robinson*, 80 Mo. 541 ; *Gaff v. Stearns*, 12 Mo. App. 115 ; *Bank v. Fitch*, 48 Barb. 344 ; *Keiler v. Tutt*, 81 Mo. 307 ; *Havens v. Richardson*, 5 N. H. 113 ; *Hill v. Bowman*, 35 Mich. 193.

Thompson, J., delivered the opinion of the court.

This is an action against Isaac M. Mason, formerly sheriff of the city of St. Louis, and the sureties on his bond, for an alleged breach of his bond in a trespass which consisted of seizing, under a writ of attachment, property claimed by the plaintiffs' usee, merchants of St. Louis, doing business under the style of Glaser Brothers, who will in the succeeding portions of this opinion be designated as the plaintiffs. The trial before a jury resulted in a verdict and judgment for the plaintiffs. The evidence given at the trial tended to show that Isaac Trepp, a merchant doing business at Centralia, Illinois, was indebted to the plaintiffs, wholesale merchants in St. Louis, in the sum of $1,749.13, for merchandise sold and delivered by them to him at various times, which indebtedness had been settled by a promissory note, which note was past due and dishonored ; that the plaintiffs, took the advice of counsel, to the effect that they might lawfully receive payment from Trepp in goods, provided they did not receive a greater

amount of goods at a fair valuation than the amount of their debt; that thereupon one of the plaintiffs and three other creditors of Trepp, together with the counsel of the plaintiffs and of other creditors, who had given this advice, proceeded by the evening train from St. Louis to Centralia; that, after arriving at Centralia and registering at the hotel, they went to Trepp's store; that Trepp went in and sent away his clerk whom he found therein; that the whole party then assembled in the store, and, from an invoice which Trepp had previously caused to be taken of his goods, proceeded to parcel them out among themselves, the plaintiffs getting not more than the amount of their indebtedness at a fair valuation of the goods; that bills of sale were drawn by the counsel, in pursuance of the agreement which had been made between Trepp and these four creditors respectively; that the note of Trepp which the plaintiffs held, was endorsed, "Paid by merchandise, April 18, 1883.  Glaser Bros. ;" that, on the following morning, the goods which had thus been set apart and transferred to the plaintiffs in payment of their debt, were hastily packed and shipped to St. Louis; that the goods which had been set apart by Trepp to the other three creditors, who had come with him from St. Louis, were in like manner hastily packed and shipped away by these creditors on the succeeding day; that the goods thus turned over to the plaintiffs in payment of their debt were attached by Samuel C. Davis & Company, creditors of Trepp, on their arrival in St. Louis, and that they were appraised in the attachment proceeding at the sum of $1,001.30, but that this did not include all the goods which were thus turned over.  It was admitted by the defendants' counsel that at the date when the goods were thus turned over by Trepp to the plaintiffs at Centralia, the amount of the note above described, $1,749.13, was due from Trepp to the plaintiffs.  It was also admitted by the defendants' counsel that the appraisement of the goods at $1,001.30, as above stated, was a fair appraise-

ment.   There is no room upon the evidence for the con-
tention that a greater amount of goods than enough to
pay their debt was turned over by Trepp to the plain-
tiffs, and it is fair to defendants' counsel to say that
such a contention is not made.   The record has been
read with care, and we discover no substantial evidence
in it tending to show that the plaintiffs received these
goods from Trepp for any other purpose than the pay-
ment of the debt which Trepp owed them.

We are asked by the learned counsel for the plain-
tiffs, in view of the fact, stated by them in their written
argument, that other cases of this kind are pending in
the circuit court, to express an opinion upon the ques-
tion, whether in this case there was any evidence of
fraud in the transaction which is challenged, to take the
case to the jury.   It is true that there is in every situa-
tion a general presumption of right acting, and that a
party who challenges a transaction on the ground of
fraud takes upon himself the burden of proving fraud.
But it is seldom possible to prove fraud by direct evi-
dence.   Men who set about to commit fraud do not do
it openly, nor do they publish their purpose to the
world.   Fraud must be inferred from circumstances,
and, in most cases, from an extensive collection of facts
which surround a transaction and tend more or less to
characterize it.   As a general rule it is very dangerous
for the judge, in a contest of this kind, to direct a
verdict on the ground that there is no evidence tend-
ing to establish fraud; and we are not prepared to
say, especially as we are not called upon by the
record to do so, that the learned judge ought to have
directed a verdict for the plaintiffs in this case.   We
are, however, prepared to say, and we think it right to
say, because it has a bearing on one of the questions
which arises in the case, that the verdict in this case is
plainly for the right party ; that if the jury had rendered
a contrary verdict it would have been the duty of the
trial court upon the first trial, at least, to set it aside as

being against the decisive weight of evidence ; and that the verdict which has been rendered embodies the conclusion which we should be obliged to reach upon this evidence, if we were dealing with it as chancellors. Such being our view of the evidence, we come now to the questions which have been pressed upon our attention on behalf of the defendants.

I. The first question is, whether the court did not err in refusing to allow the defendants to show, by several witnesses, that the goods upon their arrival in St. Louis were in such a condition as indicated that the boxes had been hastily and imperfectly packed. We quite agree with the defendants' counsel that a wide latitude is to be allowed in admitting evidence in cases of this character, and especially in the cross-examination of the parties to the transaction which is challenged as fraudulent. We do not wish to modify, limit, or abate anything which we have heretofore said in support of this view. The principle is one of great importance. All courts have so viewed it. Our supreme court in several opinions has expressed it in one form of words and another, and so have we. It would, indeed, be an extreme case which would require the reversal of a judgment on the ground that the trial court had allowed too wide a latitude in admitting testimony which might have any possible tendency to throw light upon the *bona fides* of a transaction of this kind. But, conceding as we do this principle to the fullest extent, we are unable, in the state of this record, to see wherein the court committed any error, and especially any error which could have been prejudicial to the defendants, in excluding the testimony as to the state of the packages when they arrived at St. Louis. The court admitted all the evidence which was adduced on either side as to what took place at Centralia, when the goods were parcelled out among the creditors of Trepp ; the manner in which it was done ; the secrecy and dispatch which characterized the movements of the parties ; the haste with which the goods

were packed ; the fact that the most valuable of the goods were packed first and hauled to the express office, and the imperfect manner in which the packing was done. The evidence which the court excluded, would therefore, at most, have been cumulative, and it would, not in any degree tend to show, what it was necessary for the defendants to show, in order to succeed in their defence, namely, either that the debt due from Trepp to the plaintiffs was not a *bona fide* debt, or that goods of a greater valuation than the amount of the debt had been turned over to the plaintiffs in the ostensible discharge of the debt, or that it was not the purpose of the plaintiffs and Trepp, in so turning over the goods to the plaintiffs, to pay Trepp's debt to the plaintiffs, but that it was their purpose to receive and conceal Trepp's goods for the purpose of holding them to his use and enabling him to hinder, delay, or defraud his creditors. There is nothing unlawful, or even reprehensible, in a creditor, who is endeavoring to get a preference over other creditors, proceeding with celerity, or even with secrecy. Slowness and publicity would defeat the very object which he has in view, an object which the law sanctions and even favors. *Vigilantibus non dormientibus leges subveniunt.* Speaking for myself, I do not wish to stand as an apologist for the state of the law which permits a merchant, on the eve of failure, to pay one creditor in full, and leave nothing to other creditors. I have the poorest possible opinion of such a law. But, as judges, we are not concerned with the propriety of a settled rule of law ; it is simply our duty to administer it. If, instead of hastily packing these goods, the plaintiffs, in order to get them to St. Louis on the first train and thereby avoid possible attachments which would be levied upon them by other creditors of Trepp, had thrown them into an empty car, we should not regard it as evidence tending to characterize the *bona fides* of the transaction. We are, therefore, clear that the

court committed no error available to the defendants in this ruling.

II. The next question is, whether the court committed any error in the giving or refusing of instructions. Without setting out these instructions in detail, we think it sufficient to say that the instructions which were given submitted the case to the jury fully and fairly, and in conformity with the settled law of this state.

(1) One of the instructions which the court gave is challenged, in so far as it told the jury that "such preference is valid, even though, when it is given, the debtor may not intend to pay his creditors, and even though the preferred creditor is aware thereof." We understand that this proposition is correct in point of law. A creditor may lawfully get a preference over other creditors by having his own claim paid in full, although he may know at the time that the debtor may not intend to pay his other creditors. He is not charged with keeping the conscience of his debtor, and the intent which the debtor may have, in respect of his other creditors, is something with which he has nothing to do. *Young v. Stallings*, 5 B. Mon. 508. In *Keiler v. Tutt* (31 Mo. 301, 307), it was said by Napton, J.: "If the debts were *bona fide*, and the property taken at a fair value it is not easy to see how any fraud could have existed, so long as the law allows a debtor to prefer one creditor and pay his demand, either in money or property. Such transactions are necessarily obstructions to other creditors, where the debtor's property is insufficient to pay all his debts. But we might as well attack the attaching creditor on this ground, who, if successful, would sweep off all the property, and thereby totally defeat the claims of others, as the creditor who effects the same purpose by a voluntary transfer or sale. Each is looking to his own interest, regardless of any division on equitable principles, and the course of each is alike prejudicial to the satisfaction of the other's claim. But, as the

law stands, these scrambles are tolerated, and the party who is most vigilant and active is permitted to retain the spoils. The mere fact that other creditors are obstructed or defeated does not vitiate the transaction; for such is the usual effect of all such struggles for the property of a debtor in failing circumstances, whether by attachment or by sales." See, also, *Covanhovan v. Hart*, 21 Pa. St. 501; *Bank v. Fitch*, 48 Barb. 344.

(2) Three instructions asked by the defendant were refused. The first and third were well drawn and correct in point of law, but they were sufficiently covered by the instructions which the court gave. The second was as follows:

"The court instructs the jury that the evidence in this case shows, that Glaser & Brother, Baer, Seasongood & Company, Kramer & Loth, and B. J. Solomon, jointly took the entire stock of goods of Isaac Trepp, and in determining the question of good faith of each of said creditors in taking such stock, the jury may compare the total value of the stock with the whole amount of the debts for which it was taken. In other words, even if Glaser Brothers received no more than enough to pay their debts, yet if the whole amount taken by the four concerns exceeded the whole amount of the debts, this fact may be considered upon the question of good faith involved in the inquiry before the jury."

This instruction was erroneous in its application to the evidence. There was no evidence tending to show that the four creditors, who met with Trepp at his store in Centralia, "jointly took" the entire stock of goods of Trepp. The evidence tended to show several transactions between Trepp and each of the creditors. So far as the plaintiffs were concerned, it clearly showed a separate and independent transaction between the plaintiffs and Trepp, having no relation except the mere circumstances of time and place, and coincidence of meeting, to the transactions between Trepp and his other creditors. The plaintiffs, upon the evidence, were merely endeav-

oring to save themselves, and upon no principle could be charged with responsibility for what took place between Trepp and his other creditors. Suppose, for instance, that, in turning over a portion of his goods to Solomon, who was the brother-in-law of Trepp, it had been the purpose of both Trepp and Solomon to place these goods beyond the reach of Trepp's creditors, and to hold them for the use of Trepp. In what manner would this, upon any sound principle, affect the plaintiff, unless he were a party to it and were assisting it, which the evidence does not tend to show?

III. After the evidence on both sides was all in, the plaintiffs recalled Mr. Glaser, one of the plaintiffs, and asked him what purpose he had in accepting goods in payment of this debt, what was his sole purpose. This was objected to as improper in rebuttal. In this ruling the court committed no error. Where the intent with which an act is done is material, and such was the case here, a party to the transaction is competent, in this state, to testify to the intent with which he did the act or participated in the doing of it. It is within the sound discretion of the trial court to permit the plaintiff to recall a witness after his evidence in rebuttal is in, for the purpose of testifying to something which ought properly to have been given in the case of the plaintiff in chief. Decisions might be multiplied on each of these points, but it is unnecessary to cite them.

The judgment will be affirmed. It is so ordered. Judge Lewis concurs. Judge Rombauer takes no part in the decision.