EUGENE CARTLEDGE v. JOHN L. WORTHAM, SECRETARY OF STATE.

No. 2488.  Decided February 12, 1913.

1.—Constitutional Amendment—Election—Date of Submission.

The constitutional amendment permitting cities of more than 5000 inhabitants to adopt or amend their charters by a majority vote of the electors was legally submitted for adoption at the general election held on November 5, 1912.  The Constitution (art. 8, sec. 1) required the time for its submission to be specified by the Legislature.  The joint resolution provided for its submission at the next general election held in the State, "or in case any previous election shall be held in this State for other purposes, then this proposed amendment shall be submitted to the qualified voters of the State at such election."  (General Laws, 32d Leg., p. 284.)  A special election was held on July 22, 1911, upon another amendment to the Constitution, at which the amendment in question was not submitted.  This was proper.  The general, and not the special election, was the only time designated for its submission in conformity with the constitutional requirement.  (Pp. 587-591.)

2.—Same.

The Constitution required the designation of a time certain for the election, and it could not be held at a time not so designated.  The direction for

its submission contingently, in case of a previous election for other purposes, was not a compliance with this requirement, and did not invalidate the clause fixing the date of the next general election for its submission. (Pp. 589, 590.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Cartledge appealed from a judgment for defendant in an action brought by him to contest the election and restrain the Secretary of State from canvassing the returns on the adoption of an amendment to the Constitution of the State.

*Gregory, Batts & Brooks,* for appellant.—Provisions of the Constitution regulating its own amendment are mandatory, and a strict observance of every substantial requirement is essential to the validity of the adoption of the proposed amendment. The power of amendment being itself a part of the fundamental law, cannot be exercised arbitrarily, but must conform in time, manner, and extent of its operation to the limitations imposed by the Constitution itself.    6 Ency. of Law, pp. 902-904, 906; State v. Tooker, 15 Mont., 8; Collier v. Frierson, 24 Ala., 109; Koehler v. Hill, 60 Iowa, 543; Cooley Const. Lim., pp. 78, 79, 94-99; Ex Parte Rodriguez, 39 Texas, 773-76; Hunt v. State, 22 Texas Crim., 396; Oakland Paving Co. v. Hilton, 11 Pac., 7; State v. McBride, 29 Am. Dec., 636; Wells v. Bond, 15 Am. Rep., 563; State v. Davis, 20 Nev., 220.

The Constitution providing that the date of an election for the adoption or rejection of a proposed constitutional amendment shall be specified by the Legislature, and the Legislature certainly and definitely having specified that the proposed amendment "shall be submitted to the qualified voters of the State at such special election, the time fixed for the election was mandatory, and failure to submit it at said time renders the subsequent submission of an election wholly void. It is the universal holding of the courts that time is of the substance of every election. McCrary on Elections, 4th ed., 193, sec. 176; Field v. Hall, 167 Texas Civ. App., 233; Rev. Stats., 1895, arts., 4981, 4982; Fowler v. State, 68 Texas, 30; Ex parte Rodriguez, 39 Texas, 773; McKinney v. O'Connor, 26 Texas, 11; Yates v. State, 59 S. W., 275; 15 Cyc., 341; 10 Am. & Eng. Enc. Law, 679; Toney v. Harris, 85 Ky., 453; Dickey v. Hurlburt, 5 Cal., 341; Cooley, Const. Lim., 6th ed., 779; Gossard & Vaught, 10 Kan., 1626.

*B. F. Looney,* Attorney-General, and *C. M. Cureton,* Assistant, for appellee.—Provisions of a Constitution regulating its own amendment are mandatory, and a strict observance of every substantial requirement is essential to the validity of the adoption of the proposed amendment. The power of amendment being itself a part of the fundamental law, can not be exercised arbitrarily, but must conform in time, manner, and extent of its operation to the limitations imposed by the Constitution itself. 6 Ency. of Law, pp. 902-904; State v. Tucker, 15 Mon., 8; Nesbit v. People, 19 Col., 441; Koehler v. Hill, 60 Iowa, 543; Oakland Paving Co. v. Hilton, 11 Pac., 7; State v. McBride, 29 Am. Dec., 636; Wells v. Bane, 15 Am. Rep., 563.

The publication of the resolution proposing the amendment must be made in the time and manner prescribed by the Constitution. 6 Ency. of Law, p. 906; State v. Tucker, 15 Mon., 8; State v. Davis, 20 Nev., 220; Cooley on Constitutional Limitations, pp. 78-79.

It is plain that the language employed in Article 17, to-wit: ''The time of which shall be specified by the Legislature,'' must be given its usual and ordinary meaning. Sturgess v. Crownshield, 4 Wheat. (U. S.), 122; Denn v. Reid, 10 Pet. (U. S.), 524; Cooley on Constitutional Limitations, p. 69; Story on Constitution, sec. 400.

For definitions of the word ''specified'' see: Webster's Dictionary; Century Dictionary; Stewart v. Jaques, 77 Ga., 375; 36 Cyc., p. 526; Peters v. Banter, 120 Ind., 416; Smith v. McCoole, 5 Kan., 713; Emack v. Campbell (U. S.), 14 App. Cas., 186; State v. Wallich, 12 Neb., 407; 16 Neb., 679; Stratton v. Green, 45 Cal., 149; Pickle v. Finley, 91 Texas, 484; State v. Moore, 61 Am. St. Rep., 538; State v. Lagrave, 62 Am. St. Rep., 764; Railway Co. v. McArthur, 96 Texas, 65; Sanders v. Brock, 31 S. W., 311; Clements v. Hearn, 45 Texas, 415; Tudor v. Hodges, 71 Texas, 392; Harvey v. Ogilvie, 66 Texas, 185; Seisler v. Smith, 150 Ind., 88; May v. State, 140 Ind., 88; Deen v. Rounds, 27 Atl.,515; Everitt v. Lane, 37 N. C., 548; Dauel v. Arnold, 201 Ill., 570; In re Martin, 54 Atl., 589; Roquet v. Eldridge, 118 Ind., 147; Starbuck v. Starbuck, 93 N. C., 183; Wallace v. Wallace, 23 N. H., 149; Holt v. Libby, 14 Atl., 201; Amer. Cen. Ins. Co. v. Landar, 49 Atl., 738; Union Trust Co. v. Wayne Probate Judge, 84 N. C., 1101; Gilbert v. United States, 1 Ct. Cl., 28; State v. Kendall, 18 N. C., 85; Carter v. McClaughy, 183, U. S., 365.

Upon examination of the House Joint Resolution, it will be found that the only particular time, or date, specified, was the date of the next general election; that was the only definite date, the only precise date, the only one mentioned coming within the meaning and purview of the constitutional requirement that the date should be specified.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

Certified question from the Court of Civil Appeals, Third Supreme Judicial District.

By a duly adopted joint resolution the Thirty-second Legislature, which adjourned March 11, 1911, proposed an amendment to the Constitution authorizing cities having more than 5,000 inhabitants to adopt or amend their charters by a majority vote of their electors. General Laws, 284. The second section of the resolution provides:

''The Governor of this State is hereby directed to issue the necessary proclamation, submitting this amendment to the qualified voters of Texas at the next general election held in this State, or in case any previous election shall be held in this State for other purposes, then this proposed amendment shall be submitted to the qualified voters of the State, at such election.''

A special election was held in the State on July 22, 1911, for the purpose of voting upon another amendment to the Constitution, but this amendment was not then submitted or voted upon. After due

proclamation and notice it was submitted and voted upon at the general election held on November 5, 1912, which was the next general election legally authorized to be held in the State following the passage of the resolution, and received a favorable majority vote. This suit was brought as a contest of the election and to restrain the Secretary of State from canvassing the vote and certifying the result to the Governor, upon the alleged ground that the amendment was not submitted and voted upon at the election provided by law therefor. A general demurrer to the petition was sustained by the trial court. The plaintiff appealed to the Honorable Court of Civil Appeals for the Third District, which has certified to us for decision the following question:

"Inasmuch as a special election had been held on July 22nd, 1911, did any legal authority exist for holding the election on November 5th, 1912, on the joint resolution referred to? In other words, having failed to submit that resolution to be voted upon in the special election held July 22nd, 1911, did legal authority exist for submitting it at the general election which was held on November 5th, 1912?"

In empowering the Legislature to propose amendments for adoption by the people the Constitution requires that it shall specify the time for the election at which the proposed amendment shall be voted upon. The provision, art. XVII, is as follows:

"Sec. 1. The Legislature, at any biennial session, by a vote of two-thirds of all the members elected to each house, to be entered by yeas and nays on the journals, may propose amendments to the Constitution, to be voted upon by the qualified electors for members of the Legislature, which proposed amendments shall be duly published once a week for four weeks, commencing at least three months before an election, the time of which shall be specified by the Legislature," etc.

The time for the holding of the next general election following the passage of the joint resolution was fixed by law as the first Tuesday after the first Monday in November, A. D. 1912. Rev. Stats., 1911, Art. 2910. By the terms of the resolution that was the time at which the election upon the amendment was required to be held, unless some other election should intervene. It was the only time certainly specified for the election, as by its terms the provision for a different time was inoperative except upon the occurrence of a contingent event. It is not contended that as then held the election failed in any respect to accomplish that free and fair registration of the popular will which the law designs, or that its result does not truly express the popular judgment and choice upon the question. It stands unassailed except in respect to its having been held at a lawful time. Its validity in this particular is challenged because of the provision in the joint resolution, "or in case any previous election shall be held in this State for other purposes, then this proposed amendment shall be submitted to the qualified voters of the State, at such election;" which it is said required the submission of the amendment at the election held on July 22, 1911.

It is an established principle that time is of the substance of an

election, and if it be held at a time not authorized by law a valid election does not follow. But if it be held at the time named in the law as the time certain therefor, and its integrity in the vital elements of freedom in the vote and fairness in the count be not impugned, for reasons that are fundamental the powers of a court should be devoted to the protection of its result unless its being held at such time was manifestly illegal. If the provision here invoked had the force to make any contingent election intervening before the general election the only lawful election at which the amendment could be submitted, to the displacement and exclusion of the certain election and the definite time therefor designated in the resolution, its submisison at a different election was unauthorized and illegal. But that it has such virtue should be reasonably apparent. The court is not required to search for it as with candles.

The purpose of the constitutional requirement that the Legislature shall specify the time for holding the election, is obvious. It is to facilitate the submission of the proposed amendment and insure the election at the time determined by the Legislature and by it made known to the people. Its language is equally plain, and can only mean the designation of a certain time for the election. If the provision under discussion did not amount to a specification of the time for holding the election, within the constitutional meaning, the resolution presented no possible conflict as to the time; the general election was left as the only authorized time, and, of course, the submission of the amendment then was legal. We may therefore reach the heart of the whole issue by determining this question. For that purpose the provision should be considered in and of itself, for if it was effective to fix an intervening election as the time for this one, it must be held capable of doing so by its own unaided strength; and no fairer test can be provided then to view the resolution as though it alone performed the office designating the time. To the extent that it would accomplish the purpose of the constitutional requirement, with its control thus unquestioned and its operation unqualified, its sufficiency should be determined.

Omitting all reference to the general election in this connection, the resolution would thus provide: "In case any election shall be held in this State for other purposes previous to the next general election, then this proposed amendment shall be submitted to the qualified voters of the State at such election." It is self-evident that a resolution proposing an amendment to the Constitution which contained only such a provision for the time of the election at which it was to be submitted, would utterly fail "to specify the time" of the election under any construction of the term. Yet such is the plain tenor of this resolution if this provision be alone relied on to supply this essential feature of the enactment. The proposal of a constitutional amendment by the Legislature becomes a mere pastime unless effective provision be made for its submission to the popular vote. When duly proposed it is the right of the Legislature to have the amendment submitted, and the people have the paramount right to vote upon it. The one is enforced and the other exercised by means of the election provided by the Constitution for that pur-

pose. But the Constitution does not warrant a conditional provision for the election or provision for a conditional election; the right to the election is absolute and cannot be defeated. To more strongly secure its exercise and surround it with greater certainty, the Legislature, in proposing the amendment, is not merely directed, but required to specify the time when it shall be held, so as to make it known of all men, and insure its being held at a time certain,—fixed and determined by law. Such is the controlling purpose of the constitutional requirement, as is apparent both from its general tenor and the discriminate use of the terms employed.

If the resolution had contained only this provision as to the time of the election, not only would it have failed to designate any certain time therefor, but by its terms the election itself would have been made only conditional. Under its operation the submission of the amendment at any time would have been altogether contingent upon the occurrence of a special election, and if none had intervened a vote upon the amendment would have been denied. The provision would have served, not the purpose here claimed for it, but as a limitation upon the holding of any election. It would have prescribed no certain time, but at most only a time to be thereafter fixed by the happening of a contingent event, not otherwise determined, and therefore merely a possible time. The plain constitutional requirement is that the election be made certain. Such a designation would render it altogether contingent. Its operation would be to obstruct rather than effect the constitutional purpose. We cannot believe the Constitution contemplated, in enjoining upon the Legislature by positive command the duty of specifying the time of the election upon constitutional amendments proposed by it for adoption by the people, that it might designate only a possible time therefor, and thereby reduce the election to a mere contingent event. Such a construction would hold in small regard the right of the public will to declare its judgment in such matters, and is condemned by the very nature of the proceeding itself. The provision in question clearly failed in our opinion as a specification of the time of the election, and should be so held.

But if it can be considered that the Legislature may designate a mere possible time for an election upon a constitutional amendment, which at most was the effect of this provision, certainly such a designation must yield when opposed, as was the case here, by a definite provision for a certain time at which the election was directed to be held. It would be the announcement of a sadly strained doctrine to say that an election held at a time which the law definitely prescribed as a certain time therefor is rendered illegal under another part of the law which made its being held at any different time a mere possibility.

The provision gains no additional force from the fact that the Legislature had theretofore provided for an election proceding the next general election. That resort must be had to another enactment wholly independent and not even referred to, to aid its operation, alone demonstrates how inadequately it fulfilled the purpose of such a provision as the Constitution intends. But it may be noted

in this connection that it loses none of its contingent character by reason of the prior enactment. If it can be said to have referred to the election therein provided, it was not effective upon provision for that election, but only in the event that election was held. Its operation was accordingly still left dependent upon a contingency.

This case singularly exemplifies the wisdom of the constitutional provision and strongly illustrates its purpose. A just concern for such submission of constitutional amendments as will insure a certain opportunity for the citizenship of the State to vote upon them, is evidenced by the protection with which it surrounds the exercise of that fundamental right by this unmistakable mandate that the time for the election shall not be variable or contingent, but fixed by law as a determined and certain time. Its spirit and letter both sustain the view that any designation which makes other attempt, or falls short of this plain and simple requirement, amounts to no designation at all, and is ineffectual to displace as the legal time for the election a certain date which the law has definitely prescribed.

Our holding is that the amendment was legally submitted at the general election held on November 5, 1912; and we therefore answer the certified question in the affirmative.