## UNITED STATES v. O'TOOLE et al.

(District Court, S. D. West Virginia, at Huntington. September 21, 1916.)

**1. CONSPIRACY ⟨⟩28—RIGHT TO VOTE—FEDERAL LAWS—PROTECTION.**

The right of an elector having the requisite qualifications to vote for a member of the House of Representatives, or for United States senator, being derived from the Constitution and laws of the United States, is protected by Criminal Code (Act March 4, 1909, c. 321) § 19, 35 Stat. 1092 (Comp. St. 1913, § 10183), declaring that, if two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, they shall be fined, etc.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 40, 41; Dec. Dig. ⟨⟩28.]

**2. ELECTIONS ⟨⟩126(1)—NOMINATIONS—FEDERAL RIGHTS.**

While Congress may provide rules regulating the primaries for United States senators and members of the House of Representatives, yet unless it has provided such rules directly or by necessary implication, a candidate can have no federal right in the indorsement which any political party may undertake to give under the state laws.

[Ed. Note.—For other cases, see Elections, Dec. Dig. ⟨⟩126(1).]

**3. ELECTIONS ⟨⟩120—PRIMARIES—FEDERAL LAWS.**

That Congress has provided for expenses to be incurred in primary elections by candidates for the House of Representatives and the Senate, is no adoption as federal legislation of state laws on the subject.

[Ed. Note.—For other cases, see Elections, Dec. Dig. ⟨⟩120.]

**4. STATUTES ⟨⟩1—ADOPTION—EFFECT.**

Congress may adopt state legislation and thus give it the sanction of federal legislation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 1; Dec. Dig. ⟨⟩1.]

**5. CONSPIRACY ⟨⟩28—PRIMARY ELECTIONS—OFFICES—RIGHTS PROTECTED—"ELECTIONS."**

Act June 4, 1914, c. 103, 38 Stat. 384, providing a temporary method for conducting the nomination and election of United States senators, declares that at the next regular election in any state next preceding the expiration of the term for which any senator was elected, at which election a representative to Congress is regularly by law to be chosen, a senator shall be elected by the people, and that in any state wherein a senator is to be elected, the nomination of candidates for such an office shall be made and the election held as near as may be in accordance with the laws of such state regulating the nomination of candidates for representatives at large, but, if no such provision be made, the procedure shall follow the laws respecting the election of ordinary executive officers and that candidate receiving the highest number of votes shall be deemed elected. The act provided that it should expire three years from its approval. At the time of its adoption the state of West Virginia had no act upon the subject. Defendants were charged with conspiracy in procuring unqualified persons to vote in an election for the nomination of a senator from West Virginia and of casting illegal votes, the indictments being under Criminal Code (Act March 4, 1909, c. 321) §§ 19, 37, 35 Stat. 1092, 1096 (Comp. St. 1913, §§ 10183, 10201), respectively, declaring that where persons conspire to injure any citizen in the free exercise of any right secured by the federal Constitution or laws, such persons shall be punished, and that if persons conspire to commit any offense against the United States or to defraud the United States they shall be punished. *Held* that, as there was no act regulating the nomination of senators, and

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

236 F.—63

as the word "election," as used in the act, must be deemed to mean a general, instead of a primary, election, the federal laws did not protect the rights of candidates for senators at primary elections, and hence the conspiracy did not fall within either section.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 40, 41; Dec. Dig. ⊜═28.

For other definitions, see Words and Phrases, First and Second Series, Election.]

Edward O'Toole and others were indicted for violating Criminal Code, §§ 19, 37, and they demurred. Demurrer sustained.

D. E. French, Sp. Asst. U. S. Atty. Gen., and W. G. Barnhart, U. S. Dist. Atty., of Charleston, W. Va.

Holt, Duncan & Holt and John H. Holt, all of Huntington, W. Va., and McClintic, Mathews & Campbell, W. G. Mathews, Brown, Jackson '& Knight, and Malcolm Jackson, all of Charleston, W. Va., for defendants.

WOODS, Circuit Judge. The defendants have demurred to two indictments found against them. The first charges that in a primary election held throughout the state of West Virginia on June 6, 1916, for the nomination of United States senator and certain other officers of the United States, the defendants, Edward O'Toole, Guy C. Mace, John M. Tully, Abner N. Harris, William P. Kearns, Neil Friel, Willis W. Harding, Jesse H. Petty, Everett Woodson, Andrew T. Robertson, Roy E. Lee, John Young, John M. Davidson, Earl D. Strohecker, and Emmett Conner, and I. H. Dunn, E. V. Albert, J. D. Jennings, A. E. Riley, and W. G. Martin, by procuring about one thousand unqualified voters to vote in said election, and by repeating 400 of their votes, conspired to injure and defraud Albert B. White, Howard Sutherland, and Ben L. Rosenbloom, candidates for such offices, in the free exercise and enjoyment of certain rights and privileges secured to them by the Constitution and laws of the United States, namely, the right to have only the duly qualified Republican voters of West Virginia to vote for the nominees, and for them to vote only once. This indictment is brought under section 19 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1092 [Comp. St. 1913, § 10183]), which provides:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, * * * they shall be fined," etc.

The second indictment charges that in a primary election held throughout the state of West Virginia on June 6, 1916, for the nomination of United States senator and certain other officers of the United States, the defendants named in the above indictment, by procuring about 1,000 unqualified voters to vote in said election, and by repeating 400 of their votes, conspired to defraud the United States in the matter of its governmental right to have the candidates of the true choice and preference of the Republican and Democratic parties nominated for the office of senator, and one of them elected and returned to the Senate and given the salary lawfully attaching to the office to the exclu-

sion of all other persons. This indictment is brought under section 37 of the Criminal Code of the United States, which provides:

"If two or more persons conspire either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined," etc.

[1-5] The first and comprehensive question raised by the demurrer is whether the citizens of the United States are protected by the Constitution and laws of the United States in the electoral rights conferred by the laws of the state of West Virginia providing for the selection of candidates of political parties for the office of United States senator to be voted for at the general election. The right of an elector having the requisite qualifications to vote for a member of the House of Representatives or for United States senator, and to have his vote counted, is derived from the Constitution and laws of the United States and is protected by section 19 of the Criminal Code above quoted. Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005; United States v. Mosley, 238 U. S. 383, 35 Sup. Ct. 904, 59 L. Ed. 1355.

Up to a recent date there were no state laws regulating the methods of nomination of political parties. These parties were founded on voluntary association of citizens, and they made their nominations and conducted their affairs without legislative sanction. The candidates were named by caucuses, conventions, or primary elections as the several parties determined. The nomination by a political party, whether by caucus, convention, or primary, is nothing more than an indorsement and recommendation of the nominee to the suffrage of the electors at large. In passing statutes regulating primary elections, a state recognizes the important fact that candidates go into the general elections with indorsements of political parties, and it merely provides the conditions upon which that indorsement is to be received. The indorsement of the primary contributes nothing to the legal eligibility of a candidate at the general election. It may be that every citizen eligible under the Constitution of the United States has a political right to be a candidate for United States senator, but he has no political right derived under the Constitution or statutes of the United States to present himself to the electorate with the advantage of indorsement of any political party, nor has he any right to question the method by which any other person may obtain such an indorsement. It may be true, also, that the Congress of the United States has the legislative power to provide rules regulating the primaries for United States senators and members of the House of Representatives, but unless it has provided such rules, either directly or by necessary implication, a candidate can have no federal right in the indorsement which any political party may undertake to give under the laws of a state.

It certainly cannot be successfully contended that the incidental recognition of the existence of primaries by providing for the expenses to be incurred therein by candidates for the House of Representatives

and the Senate is an adoption as federal legislation of state statutes on the subject. The Congress may adopt state legislation, and thus give it the sanction of its own legislative power (In re Coy, 127 U. S. 731, 8 ' Sup. Ct. 1263, 32 L. Ed. 274; Ex parte Siebold, 101 U. S. 371, 25 L. Ed. 717; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274); and it is insisted by the prosecution that Congress has acted and adopted the state statutes by the following enactment of June 4, 1914:

"Chap. 103.—An act providing a temporary method of conducting the nomination and election of United States senators.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that at the regular election held in any state next preceding the expiration of the term for which any senator was elected to represent such state in Congress, at which election a representative to Congress is regularly by law to be chosen, a United States senator from said state shall be elected by the people thereof for the term commencing on the fourth day of March next thereafter.

"Sec. 2. That in any state wherein a United States senator is hereafter to be elected either at a general election or at any special election called by the executive authority thereof to fill a vacancy, until or unless otherwise specially provided by the Legislature thereof, the nomination of candidates for such office not heretofore made shall be made, the election to fill the same conducted, and the result ·thereof determined, as near as may be in accordance with the laws of such state regulating the nomination of candidates for an election of members at large of the national House of Representatives: Provided, that in case no provision is made in any state for the nomination or election of representatives at large the procedure shall be in accordance with the laws of such state respecting the ordinary executive and administrative officers thereof who are elected by the vote of the people of the entire state: and provided further, that in any case the candidate for senator receiving the highest number of votes shall be deemed elected.

"Sec. 3. That section two. of this act shall expire by limitation at the end of three years from the date of its approval. Approved June 4, 1914."

Act June 4, 1914, c. 103, 38 Stat. 384.

At the time this statute was passed the state of West Virginia had no act upon the subject. If it applied to West Virginia at all, it applied by its terms only until the state of West Virginia passed an act providing a primary election for the selection by the several political parties of the candidates to be presented by them for the suffrage of the people at the general election. After the state Legislature acted, the federal statute by its terms could have no application to that state. The provision that the federal statute should cease to be operative as soon as state legislation on the subject was enacted, the provision that the act should expire by its own limitation at the end of three years from the date of its approval, together with the title of the act, show plainly that it was intended to meet a temporary exigency; also these provisions show a distinct purpose by Congress to relinquish all control and leave to the states absolute authority over the selection of party candidates for the United States Senate as soon as they had actually passed laws on the subject. There is no other constitutional provision or federal statute relating to federal control over primary elections.

We think it may be said both on reason and authority that, where the word "election" is used without qualification, the reference is to a general election, as distinguished from a primary election. State v. Johnson, 87 Minn. 221, 91 N. W. 604, 840; Montgomery v. Chelf, 118

Ky. 766, 82 S. W. 388; Gray v. Seitz, 162 Ind. 1, 69 N. E. 456. Certainly it cannot be contended that the choosing or election by the qualified electors provided for by section 2 of article 1 of the Constitution of the United States includes the selection of party candidates by primary election, for at that time such elections were unknown. We can find no provision of the Constitution of the United States or of an act of Congress which either directly or by implication warrants the court in holding that the protection of the federal government extends to the right of any citizen to participate in a party indorsement of a candidate through a primary election or otherwise. The right is created by party rules or state legislation, and the remedy, if there be one, must be derived from the same source.

We conclude that the indictments charge no conspiracy to injure, oppress, threaten, or intimidate a citizen in the free exercise and enjoyment of any right secured to him by the Constitution or statutes of the United States, or because of having exercised the same, or to commit any offense against the United States, or to defraud the United States in any manner or for any purpose.

The demurrers are therefore sustained.