A. COREY, H. B. GAYLORD, A. R. ROBERSON, C. C. FLEMING, A. W. LILLEY, P. C. BLOUNT, JR., J. C. KIRKMAN, MRS. ARTHUR WALLACE LILLEY, MRS. J. C. KIRKMAN, MRS. CAMILLE RAWLS, MRS. CLAIR FLEMING, O. W. HAMILTON, MRS. O. W. HAMILTON, J. M. HASSELL, W. J. HOLLIDAY, JR., C. GLASS, J. C. WILLIAMS, MRS. ADDIE WILLIAMS, J. O. DAVENPORT, SNEEDE L. DAVENPORT, DELLA G. HOOTEN, BEN PEELE, MRS. BEN PEELE, BENNY STYONS, MRS. BENNY STYONS, MURIEL HOLLIDAY, MRS. J. H. HOLLIDAY, H. A. SEXTON, MRS. P. C. BLOUNT, MRS. W. W. WALTERS, MRS. P. C. BLOUNT, JR., MRS. J. H. MIZELLE, R. E. GURGANUS, E. D. BROWN, MRS. E. D. BROWN, MRS. HENRY GRIFFIN, MRS. BETTY L. HASSELL, J. T. COLTRAIN, T. T. COLTRAIN, MRS. LIZZIE SMITHWICK, JOE DAVIS, MRS. JOE DAVIS, BOB MOORE, MRS. MAE WATERS, MRS. CLYDE BROWN, MRS. DELLA ASKEW, C. A. ASKEW, EVA GRAY ASKEW, HENRY MODLIN, C. T. GAINES, W. B. GAYLORD, MRS. W. B. GAYLORD, MRS. W. C. ELLIS, R. E. LAMB, ELIZABETH LAMB, MRS. MAE ROBERSON, JAMES B. HOLLIDAY, DALLAS G. HOLLIDAY, G. M. ANDERSON, ARNOLD C. BROWN, MRS. ARNOLD C. BROWN, J. H. MIZELLE, W. R. PRICE AND EFFIE HOLLIDAY AND W. C. ELLIS v. L. W. HARDISON, MAYOR, AND LUTHER HUGH HARDISON AND JAMES LONG, COMMISSIONERS OF THE TOWN OF JAMESVILLE.

(Filed 17 September, 1952.)

**1. Elections § 9—**

The provision of a statute fixing the time for holding an election is mandatory, and an election held at any other time is absolutely void. In this case an act amending a municipal charter (Sec. 4, Chap. 596, Session Laws of 1945) so as to provide for a primary election prior to the general election (Chap. 232, Session Laws of 1951) was enacted 9 March, 1951. No primary election was held 9 April, nor general election 1 May. *Held:* The court had no authority to enter a consent judgment calling for an election in 1952, and an election held under the provisions of such consent judgment is void.

147

**2. Courts § 2—**

Parties cannot by consent invest a court with a power not conferred upon it by law.

**3. Judgments § 25—**

When a court has no authority to act, its acts are void and may be treated as nullities anywhere, at any time, for any purpose.

**4. Contempt of Court § 2b—**

The violation of a provision of a judgment which is void cannot be made the basis for contempt.

**5. Same: Elections § 18a—**

Refusal of municipal officers to surrender their offices in accordance with the results of an election held pursuant to the provisions of a decree of court cannot be made the basis for contempt proceedings, since upon the hearing of the order to show cause the court must first adjudicate the rights of the parties to the offices and such adjudication can be made only in a direct proceeding for that purpose. G.S., Chap. 1, Art. 41.

APPEAL by plaintiffs from *Frizzelle, J.,* at Chambers in Snow Hill, North Carolina, on 19 April, 1952, in action pending in the Superior Court of MARTIN County.

Proceeding as for contempt.

This controversy arises out of the events and statutes mentioned in the numbered paragraphs set forth below.

1. The Town of Jamesville is a municipality of Martin County, North Carolina.

2. The municipal charter provides in express terms that the commissioners of the town "shall . . . appoint a registrar and two judges of election" to conduct elections in the municipality, and "canvass the returns" of such elections, and "enter the events on the minutes . . . of the town." 1945 Session Laws of North Carolina, Chapter 596, Sections 5 and 8.

3. The defendant L. W. Hardison was elected mayor of Jamesville and the defendants Luther Hugh Hardison and James Long were elected commissioners of Jamesville at a general municipal election held on the first Tuesday in May, 1949, in strict conformity to the following provision of the municipal charter: "There shall be an election for the Town of Jamesville on the first Tuesday in May, one thousand nine hundred and forty-five, and biennially thereafter for the purpose of electing a mayor and three commissioners, who shall hold their respective offices for two years and until their successors have been elected and qualified." 1945 Session Laws of North Carolina, Chapter 596, Section 4.

4. The defendants duly qualified for their respective offices, and entered upon the discharge of the duties annexed to such offices, and are still in the possession of such offices, claiming title to them.

5. Prior to the first Tuesday in May, 1951, to wit, on 9 March, 1951, the General Assembly of North Carolina amended the charter of the Town of Jamesville so as to provide that "all candidates to be voted for at all general municipal elections, at which time a mayor and five commissioners, . . . are to be elected, shall be nominated by a primary election" to be "held on the fourth Monday preceding the general election." The amendatory statute, which is embodied in Chapter 232 of the 1951 Session Laws of North Carolina, specifies that the primary election shall be held by the "officers of election appointed for the general municipal election . . . under the same rules and regulations . . . as are required for the general municipal elections"; that "any person desiring to become a candidate for nomination by the primary for the office of mayor or commissioner shall, at least ten days prior to the primary election, file with the town clerk a statement of his candidacy" conforming to a specified form; and that "no other names shall be placed upon the general ballot" for the general municipal election "except those nominated" in the primary election.

6. No person filed with the town clerk any statement of his candidacy for nomination for the office of mayor or commissioner in the primary election appointed by Chapter 232 of the 1951 Session Laws for the fourth Monday preceding the general election fixed by Chapter 596 of the 1945 Session Laws for the first Tuesday in May, 1951. Moreover, the primary election and the general municipal election set by these statutes for these occasions were not held.

7. On 20 September, 1951, the plaintiffs, who are residents and qualified voters of the Town of Jamesville, made demand on defendants "that an election . . . be held immediately . . . for the purpose of electing a mayor and board of commissioners for the town."

8. The demand was ignored, and on 9 November, 1951, the plaintiffs brought this action against the defendants, praying that a *mandamus* issue requiring the defendants "in their official capacities as mayor and acting board of commissioners of the Town of Jamesville . . . to call an election, and take . . . (the) . . . steps necessary to have an election of a mayor and five commissioners for the Town of Jamesville to serve until the next regular election."

9. After pleadings were filed by all parties, His Honor W. H. S. Burgwyn, the presiding judge, entered a judgment "by consent" at the November Term, 1951, of the Superior Court of Martin County, adjudging that "the plaintiffs are entitled to the relief demanded in said *mandamus* proceeding," and ordering Mrs. Mae Waters, as registrar, and Clyde Glass and Wilmer Holliday, as judges of election, to hold a primary election on Monday, 14 January, 1952, and a general municipal election on the first Tuesday in February, 1952, in accordance with the procedure

prescribed by Chapter 232 of the 1951 Session Laws and the other statutes of North Carolina relating to elections for the purposes of nominating and electing "a mayor and commissioners of the Town of Jamesville . . . to hold office until the regular election . . . in 1953."

10. Mrs. Mae Waters, Clyde Glass, and Wilmer Holliday, who purported to act as officers of election, undertook to hold a primary election and a general municipal election for the Town of Jamesville for the purposes specified in the preceding paragraph at the times named in the judgment. Their proceedings in this connection conformed strictly to the provisions of the judgment, and were sufficient in form to show that Arthur Wallace Lilley was nominated and elected mayor of Jamesville and that P. C. Blount, Tilman Coltrain, J. Oscar Davenport, Royal Gurganus, and O. W. Hamilton were nominated and elected commissioners of Jamesville.

11. Subsequent to these events, Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton took the oaths prescribed by law for municipal officers, and called on the defendants to surrender to them the offices of mayor and commissioners of Jamesville, together with the records and funds of the municipality. The defendants refused to comply with the request on the ground that they rightfully occupied such offices.

12. The plaintiffs thereupon filed a verified motion in the cause asserting that the refusal of the defendants to surrender the municipal offices, records, and funds to Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton tended "to defeat, impair, impede, and prejudice the rights and remedies of the plaintiffs in this action," and thus procured a judicial order requiring the defendants to appear before His Honor, J. Paul Frizzelle, the judge holding the Superior Court of Martin County, and show cause why they should not be punished as for contempt of court. The defendants filed a voluminous answer under oath wherein they asserted in specific detail that no primary election was held in Jamesville on the fourth Monday preceding the first Tuesday in May, 1951, because they had no knowledge whatever of the enactment of Chapter 232 of the 1951 Session Laws "until after the time for holding the primary therein provided for had elapsed"; that no general election was held in Jamesville on the first Tuesday in May, 1951, because the municipal officers were prohibited by Chapter 232 of the 1951 Session Laws from placing on the general ballot the names of any candidates other than those nominated by the primary thereby established; that they have been advised by counsel learned in the law and verily believe that the judgment signed by Judge Burgwyn at the November Term, 1951, and the supposed primary and general municipal elections conducted thereunder are nullities because primaries and elections held at times other than those fixed by statute are absolutely void; that they have likewise been advised by

counsel learned in the law and likewise verily believe that they are in the rightful occupation of the public offices, records, and funds of the Town of Jamesville under the relevant statutes, to wit, G.S. 160-27 and section 4 of Chapter 596 of the 1945 Session Laws, because such statutes stipulate in substance that they are entitled to hold their respective offices until their successors shall be duly elected and qualified; and that they have acted in good faith with respect to all things in controversy.

13. When the show cause order was heard, Judge Frizzelle found as a fact that the acts of the defendants in refusing to surrender the public offices, records, and funds of the Town of Jamesville to Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton were not contemptuous, but, on the contrary, were done in good faith. He concluded as matters of law that the consent judgment rendered at the November Term, 1951, and all proceedings had thereunder are void, and that the defendants are not subject to punishment as for contempt. He thereupon entered an order discharging the show cause order.

14. The plaintiffs appealed, assigning the entry of Judge Frizzelle's order as error.

*Peel & Peel for plaintiffs, appellants.*

*Robert H. Cowen, Albion Dunn, and J. L. Emanuel for defendants, appellees.*

ERVIN, J. The appeal raises this solitary question: Did Judge Frizzelle err in adjudging the defendants not subject to punishment as for contempt?

The plaintiffs set the proceeding as for contempt in motion on the theory that the refusal of the defendants to surrender the public offices, records, and funds of the Town of Jamesville to Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton runs counter to. this portion of the statute codified as G.S. 5-8 (1): "Every court of record has power to punish as for contempt . . . any clerk, sheriff, register, solicitor, attorney, counselor, coroner, constable, referee, or any other person in any manner selected or appointed to perform any ministerial or judicial service, for any neglect or violation of duty or misconduct by which the rights or remedies of any party in a cause or matter pending in such court may be defeated, impaired, delayed, or prejudiced."

An act or default is not punishable by a court of record as for contempt under this statutory provision unless these three essential elements concur:

1. The alleged contemnor must be a clerk, sheriff, register, solicitor, attorney, counselor, coroner, constable, referee, or other person appointed or selected to perform a ministerial or judicial service.

2. He must be guilty of neglect or violation of duty, or of misconduct in the performance of such service.

3. His neglect or violation of duty or his misconduct in such respect must have a tendency to defeat, impair, delay, or prejudice the rights or remedies of a party to a cause or matter pending in the court.

The plaintiffs maintain that Judge Frizzelle erred in holding the defendants not subject to punishment as for contempt. They advance these arguments to sustain their position: That the consent judgment rendered by Judge Burgwyn at the November Term, 1951, of the Superior Court of Martin County and the primary and election held by Mrs. Mae Waters, Clyde Glass, and Wilmer Holliday thereunder imposed upon the defendants as incumbents of the offices of mayor and commissioners of the Town of Jamesville the judicial duty to adjudge Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton to be their duly elected successors, and the ministerial duty to surrender to them as such the public offices, records, and funds of the municipality; that the defendants violated these duties; and that the violation of these duties by the defendants tended to defeat, impair, delay, or prejudice the rights or remedies of the plaintiffs as parties to this cause to have Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton placed in possession of the public offices, records, and funds of the Town of Jamesville.

The position of the plaintiffs is untenable for the very simple reason that the consent judgment and all proceedings had thereunder are void, and imposed no duties whatever upon the defendants.

When it adopted Section 4 of Chapter 596 of the 1945 Session Laws, the Legislature clearly contemplated that the general municipal election thereby authorized and required should be held on the first Tuesday in May in the odd numbered years, and at no other time; and when it enacted Chapter 232 of the 1951 Session Laws, the Legislature plainly intended that the primary election thereby authorized and required should be held on the fourth Monday preceding the general municipal election, and at no other time.

These things being true, the primary held on Monday, 14 January, 1952, and the election held on the first Tuesday in February, 1952, fall under the condemnation of the rule that where a statutory provision fixing the time for holding a public election is mandatory, a public election held at some other time is absolutely void. *Rodwell v. Harrison*, 132 N.C. 45, 43 S.E. 540; *S. v. Osborne*, 14 Ariz. 185, 125 P. 884; *Simpson v. Tefller*, 176 Ark. 1093, 5 S.W. 2d 350; *Merwin v. Fussell*, 93 Ark. 336, 124 S.W. 1021; *Kimberlin v. State*, 130 Ind. 120, 29 N.E. 773, 14 L.R.A. 858, 30 Am. S. R. 208; *Gossard v. Vaught*, 10 Kan. 162; *Doores v. Varnon*, 94 Ky. 507, 22 S.W. 852; *State v. Webb*, 49 Mo. App. 407; *State ex rel. White v. Ruark*, 24 Mo. App. 325; *State ex*

*rel. Sibbald v. Brickell,* 59 N.J.L. 420, 36 A. 1032; *People ex rel. Smith v. Schiellein,* 95 N.Y. 124; *Brewer v. Davis,* 9 Humph. (Tenn.), 208, 49 Am. D. 706; *Cartledge v. Wortham,* 105 Tex. 585, 153 S.W. 297.

The validity of this conclusion is not diminished in any degree by the circumstance that the primary and election were held in obedience to the consent judgment. In the very nature of things, a court lacks jurisdiction to authorize or compel the holding of an invalid primary, or a void election. The parties to a cause cannot by consent invest a court with a power not conferred upon it by law. *Dees v. Apple,* 207 N.C. 763, 178 S.E. 557; *Saunderson v. Saunderson,* 195 N.C. 169, 141 S.E. 572. When a court has no authority to act, its acts are void, and may be treated as nullities anywhere, at any time, and for any purpose. *High v. Pearce,* 220 N.C. 266, 17 S.E. 2d 108.

The order holding the defendants not subject to punishment as for contempt under G.S. 5-8 (1) is correct for the additional reason that the supposed right to have Lilley, Blount, Coltrain, Davenport, Gurganus, and Hamilton placed in possession of the public offices, records, and funds of the Town of Jamesville is not a right or remedy available to the plaintiffs as parties to this cause. It is manifest that the court cannot recognize or enforce this supposed right without first adjudging that the claims of Lilley and his associates to the offices of mayor and commissioners of Jamesville are superior to those of the defendants. This matter is not open to determination in this case. This is so because the title to a public office can only be determined in a direct proceeding brought for that purpose under the statutes incorporated in Article 41 of Chapter 1 of the General Statutes. *Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292.

There is no factual or legal basis for any suggestion that the election held on the first Tuesday in February, 1952, was conducted under the provisions of Section 14 of Chapter 596 of the 1945 Session Laws.

For the reasons given, the order of Judge Frizzelle is
Affirmed.