HUGH THOMAS TUCKER, Petitioner, v. STATE OF NORTH CAROLINA BOARD OF ALCOHOLIC CONTROL; T. W. ALLEN, S. B. ETHERIDGE, AND FRANK T. ERWIN, Members of Said Board; AND ROY L. DAVIS, Secretary of the Said Board, Respondents.

(Filed 28 April, 1954.)

**1. Elections § 1—**

There is no inherent power in any governmental body to hold an election for any purpose, and an election held without affirmative constitutional or statutory authority is a nullity, no matter how fairly and honestly it may be conducted.

TUCKER *v.* A.B.C. BOARD.

**2. Elections § 9—**

The fact that a municipal primary election is held less than sixty days subsequent to a local option election does not invalidate the local option election, G.S. 18-124 (f), if the municipal primary election is held without constitutional or statutory authority and is, therefore, a legal nullity.

**3. Elections § 1—**

Provision of a municipal charter authorizing the mayor and governing body of the city to provide for election of city officers, as provided in another section (Chapter 716, Session Laws of 1947, Sec. 11), and "any other election authorized for city purposes," *is held* to authorize the governing body to call the election of city officers and such other elections for city purposes as are affirmatively authorized by statute, but does not authorize the governing body to call a primary municipal election without any statutory authorization.

**4. Same—**

Statutory authority to a municipal governing body to call a quadrennial election for the election of city officers does not by implication authorize the governing body to call a primary election to select candidates to run in the municipal election. (Chapter 716, Session Laws of 1947, Sec. 16).

**5. Elections § 24—**

In the absence of a specific constitutional or legislative regulation on the subject, the law commits the nomination of candidates for political parties for public offices to party caucuses, party conventions, or such other unofficial procedures as party rules may establish.

APPEAL by petitioner from *Harris, J.,* at November Term, 1953, of WAKE.

Petition for judicial review of the final administrative decision of the State Board of Alcoholic Control denying the petitioner a permit to retail beer in Cabarrus County.

This proceeding arises out of the events and statutes mentioned in the numbered paragraphs set forth below.

1. On 21 February, 1949, a local option election was held in Cabarrus County in conformity to subsections (a), (b), (c), (d), and (e) of G.S. 18-124 for the purpose of determining whether or not both wine and beer should be legally sold within the county as a whole. A majority of the votes cast in such election was against the legal sale of both wine and beer.

2. On 3 March, 1949, the mayor and the governing body of the City of Concord, a municipality in Cabarrus County, adopted two resolutions. The first provided for the holding of a municipal primary on Tuesday, 12 April, 1949, to nominate candidates of the several political parties for the offices of mayor and aldermen; and the second provided for the holding of a municipal election on Tuesday, 3 May, 1949, to elect by means of an official ballot bearing the names of the primary nominees persons to serve as mayor and aldermen for the four years next ensuing.

3. The municipal primary and the municipal election were held on the days specified in the resolutions under the direction of the mayor and the governing body of the City of Concord by election officials appointed for the purpose. In calling and holding the municipal primary and the municipal election, the mayor and the governing body professed to act under the provisions of the Charter of the City of Concord embodied in Sections 11 and 16 of Chapter 716 of the 1947 Session Laws of North Carolina.

4. On 3 August, 1953, the petitioner Hugh Thomas Tucker applied to the respondent State Board of Alcoholic Control for a permit to retail beer at a particular place in Cabarrus County by a verified written application, which stated true facts showing that both he and the place in which he proposed to retail beer satisfied all the requirements of G.S. 18-130. The petitioner complied, moreover, with the provisions of G.S. 18-133 respecting the giving and posting of notice of his application.

5. Subsection (f) of G.S. 18-124 provides that no local option election on the question of the sale of wine and beer "shall be held . . . in any county within sixty . . . days of the holding of any general election, special election or primary election in said county or any municipality thereof." Since the local option election conducted in Cabarrus County on 21 February, 1949, was held within sixty days of the holding of the municipal primary conducted in the City of Concord on 12 April, 1949, the petitioner's application and all subsequent proceedings relating to it necessarily posed for decision the legal question whether the municipal primary of the City of Concord constituted a valid primary election within the purview of subsection (f) of G.S. 18-124.

6. On 9 September, 1953, the State Board of Alcoholic Control made its final administrative decision on the petitioner's application. In so doing, the Board made findings of fact conforming to the matters set out above, concluded as matter of law thereon that the municipal primary of 12 April, 1949, was void because not authorized by law, and refused to issue the requested permit to the petitioner solely upon the ground that the sale of beer had been outlawed in Cabarrus County by the local option election of 21 February, 1949.

7. Within the thirty days specified in the statute now codified as G.S. 143-309, the petitioner filed a petition in the Superior Court of Wake County to obtain a judicial review of the final administrative decision of the State Board of Alcoholic Control denying his application for a permit to retail beer in Cabarrus County. The Board and its members and secretary answered the petition. The pleadings of all the parties revealed the truth of the matters set forth in this statement of facts, and raised the single issue of law whether or not the municipal primary of 12 April,

1949, constituted a valid primary election within the purview of subsection (f) of G.S. 18-124.

8. The issue of law was tried by Judge W. C. Harris at the November Term, 1953, of the Superior Court of Wake County. Judge Harris adjudged that the municipal primary was void because it was not authorized by law, and entered a judgment affirming the final administrative decision of the State Board of Alcoholic Control. The petitioner excepted to the judgment and appealed, assigning the ruling on the issue of law and the resultant judgment as error.

*Webster S. Medlin for petitioner, appellant.*

*Attorney-General McMullan, Assistant Attorney-General Love, and Max O. Cogburn, Member of Staff, for the respondents, appellees.*

ERVIN, J. There is no inherent power in any governmental body to hold an election for any purpose. In consequence, an election held without affirmative constitutional or statutory authority is a nullity, no matter how fairly and honestly it may be conducted. *Corey v. Hardison,* 236 N.C. 147, 72 S.E. 2d 416; *Rodwell v. Harrison,* 132 N.C. 45, 43 S.E. 540; *Van Amringe v. Taylor,* 108 N.C. 196, 12 S.E. 1005, 12 L.R.A. 202, 23 Am. S. R. 51; 18 Am. Jur., Elections, Section 100; 29 C.J.S., Elections, Section 66.

In the very nature of things, the result of the local option election held in Cabarrus County on 21 February, 1949, was not invalidated under subsection (f) of G.S. 18-124 by the holding of the municipal primary in the City of Concord within the ensuing sixty days if the municipal primary was a legal nullity. This being so, the appeal poses this problem for solution: Did the mayor and the governing body of the City of Concord have affirmative constitutional or statutory authority to hold the municipal primary?

It is apparent that they had no constitutional warrant for their action. It is likewise apparent that they had no statutory authority for their action unless such authority can be found in the provisions of the Charter of the City of Concord embodied in Sections 11 and 16 of Chapter 716 of the 1947 Session Laws of North Carolina. We quote these sections in inverse numerical order.

"Sec. 16. On Tuesday after the first Monday in May, 1949, and on the corresponding Tuesday every four years thereafter, there shall be elected at large of and by the qualified voters of said city a mayor and one member of the board of aldermen, and in each of said wards there shall be elected separately of and by the qualified voters therein one alderman for each ward; and the aldermen so elected shall constitute the board of aldermen of said city, and each of said officers so elected shall hold office

for four years, or until his successor is duly elected and qualified: Provided, that no person shall have the right to vote at any election held in said city unless he shall have been a *bona fide* resident of the ward in which he proposes to register and vote, according to the requirements and provisions of the General Election Law of the State of North Carolina."

"Sec. 11.˙ The elections herein provided for officers of said city, and any other election authorized for city purposes, shall be called, held, conducted and concluded under the direction of the mayor and governing body by election officials designated and appointed by them for that purpose, in manner and form in every respect and detail as nearly as may be and under the same provisions of law and practice as nearly as may be as elections for county officers are held and conducted, and under the general laws relating to such elections in North Carolina in force at the time of such city election, including all the penalties prescribed for the violation of such law: Provided, that when any certain duties are prescribed under the general election law to be done and performed by State or county officials unknown to municipal corporations, which are likewise required to be done and performed in such city election, then and in that case such duties shall be done and performed by the city officer or officers whose office and duties bear the greatest analogy to those of the officer named in the general election law for whom such duty is prescribed; for example, chief of police to sheriff, city clerk to Clerk of the Superior Court."

The petitioner advances a twofold argument to support his theory that these sections conferred statutory authority upon the mayor and the governing body of the City of Concord to hold the municipal primary.

His initial argument may be stated in this fashion: (1) Section 11 of Chapter 716 of the 1947 Session Laws vested in the mayor and the governing body of the City of Concord the authority to hold "the elections . . . provided for officers of said city, and any other election authorized for city purposes." (2) The municipal primary was authorized by the mayor and the governing body for a city purpose. (3) Hence, the municipal primary constituted an "election authorized for city purposes" within the meaning of section 11.

This argument is untenable because it rests on a misconstruction of section 11. When it enacted this section, the Legislature did not confer upon the mayor and the governing body of the City of Concord discretionary power to hold elections for city purposes in the absence of affirmative statutory warrant. It merely empowered them to hold the quadrennial election to fill municipal offices required by section 16, and such other elections for such other city purposes as were affirmatively authorized by other statutory provisions.

The petitioner's other argument may be summarized in this way: (1) The power to hold the quadrennial election to fill the municipal offices was granted to the mayor and the governing body of the City of Concord in express terms by section 16. (2) A municipal primary to make prior party nominations of candidates for the municipal offices was necessary to enable the mayor and the governing body to hold the quadrennial election. (3) Hence, the power to hold the municipal primary was necessarily implied in law from the express power to hold the quadrennial election.

This argument cannot be reconciled with the historical circumstances that elections were employed to fill public offices for many generations before nominating primaries were devised, and that nominating primaries had their genesis in express legislative enactments of a comparatively recent date. *U. S. v. Gradwell, R. I. & W. Va.,* 243 U.S. 476, 37 S. Ct. 407, 61 L. Ed. 857; *U. S. v. O'Toole,* 236 F. 993; *State v. Bienstock,* 78 N.J.L. 256, 73 A. 530.

The argument is fallacious in other respects. The language of section 16 and contemporary statutory provisions did not disclose any legislative intent that the quadrennial election of 1949 should be a partisan contest between opposing political parties. The argument would be without validity, however, even if the language had been susceptible of that construction. This is true for this simple reason: In the absence of a specific constitutional or legislative regulation on the subject, the law commits the nomination of candidates of political parties for public offices to party caucuses, party conventions, or such other unofficial procedures as party rules may establish. 29 C.J.S., Elections, section 89.

What has been said compels the conclusion that the mayor and the governing body of the City of Concord had no statutory authority to hold the municipal primary of 12 April, 1949, and requires an affirmance of the judgment.

Since the occurrences culminating in this proceeding the Legislature has made express provision for the future holding of nominating municipal primaries in the City of Concord. 1953 Session Laws, Ch. 1297.

Affirmed.